Durrett *et al. vs.* Rucker and Haslett, ex'rs, &c.

D. S. PRINTUP, for defendant in error.

———————————

RICHARD D. DURRETT *et al.*, plaintiffs in error, *vs.* ELBERT M. RUCKER and WILLIAM M. HASLETT, executors of JOSEPH RUCKER, deceased, defendants in error.

NOTE.—WARNER. C. J., did not preside in this case.

(Only two Judges presiding and they differing in opinion, nothing is decided in this case by the Supreme Court. The judgment below is affirmed by force of the statute.)

Bill for direction. Decided by Judge WILLIAM M. REESE. Elbert Superior Court. March Term, 1867.

Joseph Rucker executed his last will and testament on the 12th of March, 1861.

The 8th and 9th items of it were as follows:

"Eighthly.—I give, bequeath and devise to the children

of my daughters, Martha Durrett and Catharine White, twenty-five hundred dollars in money, and twenty-five negroes of an average value of those remaining or not otherwise disposed of, to be equally divided among them all,—that is, all of the children of my daughters, Martha Durrett and Catharine White, in fee simple.

" Ninthly.—I give, bequeath and devise to the children of my daughters, Martha Durrett and Catharine White, one-seventh part of the remainder of my negroes not otherwise disposed of, at an average value, to be divided among them share and share alike ;—that is, the children of my daughters, Martha Durrett and Catharine White, in fee simple forever."

In 1864, Joseph Rucker died. Said will was proven in common form in September, 1864, and in solemn form in March, 1865. Elbert M. Rucker and William M. Haslett were qualified as his executors in September, 1864.

Martha Durrett and Catharine White died before the will was made. At that time, there were living two children of Martha Durrett, to-wit: Thomas J. R. Durrett of Hart County, (who died in Hart County, Georgia, in August, 1864, a few weeks before the death of said testator,) and Frances M. Harper, wife of William J. Harper, of said Elbert County. Thomas J. R. Durrett, deceased, left three children, to-wit: Richard D. Durrett, Agnes Durrett and Thomas Durrett, all minors, still residing with their mother in Mississippi.

When the will was made, there were living two children of Catharine White, to-wit: Margaret Ruffin, wife of Thomas Ruffin of Mississippi, and Sarah F. Ruffin, who died in 1864, before the death of said testator,—she leaving three children, to-wit: David W. Ruffin, Rosa M. Ruffin and Kate Ruffin, all minors, residing, (when the bill was filed,) in Mississippi.

For William J. Harper and Frances, his wife, and Thomas Ruffin and his wife Margaret, it is claimed that said legacy to the children of Martha Durrett and Catharine White, belongs exclusively to them, as the only persons living at the death of the testator, who answered the description of " the children of Martha Durrett and Catharine White."

For the said minor children of Thomas J. R. Durrett, and

18

the said minor children of Sarah S. Ruffin, it is claimed that they are entitled to the shares of said legacy which their said parents, if living at testator's death, would have respectively taken.

Emancipation having disposed of the negroes as property, the fight is over the money legacy only.

The prayer of the bill filed by said executors, is that they be directed how to pay out said fund.

Guardians *ad litem* for the minors were appointed. All the claimants answered the bill, admitting the statements aforesaid, and setting up their respective claims as aforesaid.

By consent all the questions of law and fact were submitted to the Judge for decision, and it was understood that he would file his written decision, and either party might except within thirty days thereafter.

The decision of Judge Reese, after stating the facts, is as follows:

The controversy between grandchildren and great-grandchildren, has given rise to the bill filed by the executors for direction.

The grandchildren, called in the will the children of his daughters, (M. D. and C. W.,) insist that the legacy of $2,500 is given to a class, and under the law, passes to the survivors of that class. The great-grandchildren insist that the legacy is given to individuals, sufficiently described to be ascertained, and under the law of lapsed legacies, descends to them.

According to Mr. Jarmin, v. 2, p. 69 b, the legal construction of the word "children," accords with the popular meaning, and refers to immediate offspring; and the same author, in page 74 of 2 vol., says, an immediate gift to children, that is, a gift to take effect or possession immediately on the decease of testator, whether the gift be to children of living or deceased persons, whether "to children" simply, or "to all the children," and whether there be a gift over, in case of the decease of any of the children under age, or not comprehending children living at testator's death only. This author says the words "the children" and "all the children," mean the

Durrett *et al.* *vs.* Rucker and Haslett, ex'rs, &c.

same—one is no clearer than the other.    To sustain his position, the author cites 1 Brown C. C. Rep., p. 542 ; 5 Madd., 332, which sustain him fully.

In 25 Ga., p. 559, Judge McDonald says, " the negroes are all passed by the second item of the will absolutely, except seven—they passed to the children of testator.  Grandchildren cannot take by the descriptive word ' children,' unless there is something in the will to manifest that intention. Nothing could pass to Philip Walker, for he is not named, and at the death of testator, he was dead.   He was not a child." On p. 356, the Judge (McDonald) says, "According to the interpretation we put on the will, Walker could take no interest under the 2d item of the will.  The children who are beneficiaries under that class, are not named.   The negroes are given to the children as a class, at the death of testator."

In v. 1, p. 295, Jarmin says, " when the devise embraces a fluctuating class of persons, who by the rules of construction, are to be ascertained at the testator's death, the decease of any such person during the testator's lifetime, will occasion no lapse, even though the legatees are made tenants-in-common, since members of the class antecedently dying, are not actual objects of the gift.   Then if the property be given simply to the children, equally to be divided between them, the entire subject of gift will vest in any one child or a larger number of them surviving the testator, without regard to previous deaths."   The author cites 13 East, p. 526, to sustain this proposition.

In this case from East, a contest arose over the following words of a will: "I give unto the children of Mary S., £50 to be equally divided amongst them, share and share alike, and to the children of R. M. £20, to be equally divided amongst them, share and share alike." Lord Ellenborough, Chief Justice, says in relation to this will, then, "Looking at the will before us, I have little doubt in saying that the testator intended to devise his estate to the several objects of his bounty in classes, taking the chances of there being a greater or less number of persons in each class, and meaning if there was more than one individual of the

same description, they should all take equal shares,—if only one, that one should take the whole given to that class." Lord Ellenborough refers in this case to 2 Vernon, Crook vs. Brooking, as an authority.

Jarmin on the subject of Lapse further says, v. 1, p. 295, "And the rule is the same when the gift is to the children of a person actually dead at the date of the will, in which case it is to be observed, that the class is susceptible of fluctuation only by diminution." He cites as authority, 2 Brown, C. C., 658, (v.) a. The case referred to in 2 Brown is as follows: "Master of the Rolls,—there is no doubt in this case as to the bequest to the children of S. W., for all S. W.'s children were alive at testator's death." It was once thought that a bequest to the children of A., might extend to all the children born at any future time; but it is now settled in favor of such children as are born at the time the distribution of the fund was to take place,—the doubt in this case arising on the clause which gives "to the children of my late sister M. C., £2,000 to be equally divided between them."

As I said before, the general rule is, that the children living at the time of the distribution of the fund, shall take. It is to be distributed at testator's death; such children as are then alive, shall take. If it is to be distributed at the death of some other person, then the testator should be supposed to mean such children as are then living. Then the question is, whether a gift to the children of his late sister C., is or is not indicative of an intention different from what would be imputed to him under this general rule; namely, that he meant the particular children living at the time he made his will, to take the fund equally between them, and that it was the same thing as if he had given "the £2,000 to the three children of my late sister," for in that case it would have been a legacy to these designated persons. Now when a testator gives a fund to be divided amongst his own children, he shall be supposed to mean such children as shall be living at the time of his death; if so, why should I suppose that the sister being dead, he meant to do anything else than what would be imputed to him in the other case? This is not like the case

of Bender vs. Suffolk, 1 P. Wms. 96, for there the gift is to the five children, "which shows that he had particular objects in view. The general rule, I take it, is to exclude all children who, though living at the time of execution of the will, yet die before the testator, and to include those who are living at the time of distribution, though born after the will or the death of the testator." Such is the case from 2d Brown, and one similar to the case now before me.

It is true that the case of Martin vs. Wilson, 3 Brown, C. C., 325, is opposed to the one just cited; but Jarmin and Roper both condemn it, say it would not be followed, and was made in ignorance of the case in 2 Brown, C. C. The only other case remaining to be noticed, is that in 30 Ga., 977, where the question was, whether certain words made a gift to a class or to individuals—the words being, "The estate to be divided between my two sisters' children, E. J. and M. L., viz, (naming the children); and the facts in addition were, that one of the named children died before the testator and unknown to him. Judge Stephens delivered the opinion of the Court thus: "Did the testator intend to give the estate to certain persons named, and who were children of his two sisters, or did he intend to give it to a class described as children of his two sisters, including all who fell within this class and none who did not—the names only being mentioned as a supposed correct enumeration of the individuals who composed the class?" To this question the Judge says: "Though children were named, class was the leading idea. Blood was the probable motive of the gift, and we think the gift should go to all who were children of the two sisters and none others—to all who, at the death of testator, answered the description,—that being the time when the will was to speak."

Counsel for the great-grandchildren of Mr. Rucker, urge in reply to this case, that while this is a true rule of construction when the contest is between surviving children or grandchildren and residuary legatees or heirs at law, it should be varied when the contest is between surviving children and grandchildren or the issue of children;—that it, should be

held in such cases the word "children" means not a class, but particular persons. I think it is impossible, consistently with reason, to maintain that the words of a testator may mean differently according to the particular form of the controversy before the Court;—that the will should be construed to meet all the accidents of life;—that if certain events happen, it shall be construed to mean a class, and if certain other events happen, particular persons.

To show further that the words of this testator must be construed according to the usual rule, I will notice some very important omissions. The testator, Rucker, names no child or children—a remarkable omission of a grandfather familiar with his descendants, desiring to give to particular persons and not a class. Then there are no words of reference to existing children, no allusion to their number, no words of identification. The money given is not divided into two equal parts between the children of Mrs. D. and Mrs. W., thus showing an intention not to give one grandchild more than another, no matter from what stock he may issue. The legacy given is not divided into parts corresponding with the actual number of children when the will was made. I am therefore of the opinion, that the claim of the grandchildren, the surviving children of Mrs. D. and Mrs. W., is the best, and do order the $2,500 to be equally divided amongst the children of Mrs. Durrett and Mrs. White alive at the testator's death, and no others; and I further order and direct the costs of this proceeding and fee of complainant's counsel, be paid from the residuary legacy of testator, as this is the proper fund to charge these items of expense upon, according to the decision in 14 Ga., 416.

Edmund B. Tate, Jr., *prochien ami* for Richard D. Durrett, Agnes Durrett and Thomas Durrett, and for David M. Ruffin, Rosa M. Ruffin and Kate Ruffin, excepts to the decision, claiming that the Durretts and Ruffins respectively are entitled to one-fourth of said legacy.

The executors except to that part of the decision which

Durrett *et al. vs.* Rucker and Haslett, ex'rs, &c.

charges the residuary legacies with costs, etc., they contending that the $2,500 should be charged therewith.

ROBERT HESTER for the minors, } for plaintiffs in error.
A. T. AKERMAN for the executors, }

E. P. EDWARDS, for William J. Harper *et uxor*, defendants in error.

Judge WALKER adopts the opinion of Judge REESE.

HARRIS, J.

At present this Court consists of only two Judges. Under the act organizing it, the concurrence of one of the Judges presiding, will affirm the decision below.   Judge Walker concurs with the circuit Judge, and that disposes of the case. I withhold my assent.   I am strongly inclined to doubt whether the rule of construction followed by Judge Reese in this case, and upon the correctness of which all the adjudicated cases cited by him depend, is in accordance with the fundamental rule of interpretation of wills,—the intention of the testator.   I cannot bring myself to think otherwise than that a testator, when he gives a moneyed legacy to the children of a deceased daughter, he means those living at the time *of making his will*, and not those of them living at the time of his death.   If the Courts would adopt the period of the *making* of the will as the point of time for the ascertainment of who were *intended* to be the devisees, it occurs to me that many difficulties would thereby be avoided, which must continue to embarrass decision otherwise;—and they would give effect almost universally to the intent of testators.   It would also give effect to that clause of our Code which declares that legacies without remainder or limitation shall not lapse, but shall vest in the issue in the same proportions as if inherited directly from their ancestor.

I desire the question open, hence this dissent.